UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mark A. Dooley and Claudia
Dooley, Trustee of the Irrevocable
Trust for the Benefit of Mark A.
Dooley,

    Plaintiffs,

v.

Spirit of the North Resort, Inc.,
a Minnesota corporation,

    Defendant.

Civil No. 08-4759 (JNE/RLE)
ORDER

Michael M. Bader, Esq., Michael M. Bader, LLC, appeared for Plaintiffs.

Robert W. Kettering, Jr., Esq., Theodore J. Smetak, Esq., Joseph J. Cates, Esq., Arthur Chapman Kettering Smetak & Pikala, PA, appeared for Defendant Spirit of the North Resort, Inc.

On July 24, 2006, twenty-nine-year-old Mark Dooley dove from the end of a dock at the Spirit of the North Resort, Inc. (Resort), into shallow lake water. His head struck the sandy lakebed, breaking his neck and rendering him a quadriplegic. Dooley and Bhavik Patel, as Trustee of the Irrevocable Trust for the Benefit of Mark A. Dooley (collectively, Plaintiffs), brought this action on July 24, 2008, asserting claims for negligence and deceptive trade practices against the Resort; Anderson's Shelter Cove, Inc.; Chippewa Lodge Resort; Anderson's Grand Vu Lodge, Inc.; Northland Lodge;[1] and Traders Bay Lodge (collectively, Defendants). All Defendants except the Resort were dismissed with prejudice pursuant to stipulation on December 1, 2009. On December 16, 2009, Claudia Dooley was substituted for Patel as Trustee of the Irrevocable Trust for the Benefit of Mark A. Dooley. Now before the Court is the Resort's

---

[1] An Amended Complaint was filed on April 2, 2009, naming Cass Fishing, Inc., d/b/a Northland Lodge, a/k/a Anderson's Northland Lodge.

1

Motion for Summary Judgment on Plaintiffs' negligence claim.[2] For the reasons discussed below, the Court denies the Resort's motion.

## I. BACKGROUND

The Resort, owned and operated by Tim and Susan Anderson since 1989, offers guest cabins for rent on Leech Lake Reservoir (Lake) in northern Minnesota. In 2006 and earlier, a dock on the Resort's property extended seventy feet into the Lake. The dock contained an octagonal platform at its end with two benches and a table. The Resort also maintained a "water trampoline" from which guests regularly dove located several feet from the end of the dock. Although Susan Anderson denied observing guests dive from the platform, others testified that they had dived from the platform or observed other guests dive from the platform on a regular basis before 2006. In addition, Susan Anderson testified that over the years she saw guests of the Resort drink alcoholic beverages on the premises.

Dooley is a Missouri citizen who had vacationed at the Resort with his family for one-week periods each summer for at least ten years before 2006. During his stays at the Resort, Dooley regularly dived from the platform at the end of the dock using a shallow dive to avoid hitting the lakebed. Dooley, who is five feet seven inches tall, testified that the water at the end of the dock was ordinarily chest deep. Although he was aware of the danger of diving into shallow water, Dooley was proficient at shallow diving because he was an experienced swimmer and diver who had swum competitively in high school and college, coached a neighborhood swim team, and obtained his water safety instructor certificate during college.

---

[2] Neither party addressed Plaintiffs' claim for deceptive trade practices. In addition, Plaintiffs inadvertently filed their opposition memorandum one day late. The Resort does not object to the late filing. Accordingly, the Court grants Plaintiffs' Motion for an Extension of Time to Reply to Defendant's Motion for Summary Judgment.

Dooley arrived at the Resort late in the day on July 23, 2006. He did not go to the Lake that day but instead had dinner with family and played cards late into the evening. The next day, Dooley waded into the water near the dock to skip rocks with his niece and his cousin's children. He testified that the water was knee deep less than halfway from the end of the dock. Afterwards, from roughly 2:30 p.m. to 6:00 p.m., Dooley sat on the platform at the end of the dock talking with relatives and drinking six beers. At some point, Dooley observed two eleven- or twelve-year-old girls dive from the platform without incident. Shortly before dinnertime, Dooley decided to swim to the water trampoline. Without verifying the depth of the water, Dooley attempted a shallow dive from the end of the dock. His head struck the sandy lakebed, fracturing three vertebrae and resulting in quadriplegia.

Unbeknownst to Dooley, who was living in Kansas at that time, northern Minnesota was suffering from a drought in 2006 and the water level in the Lake was the lowest that Tim and Susan Anderson had observed in twenty years. Dooley testified that he did not notice that the water level was lower than previous years, and it is unclear whether the bottom of the Lake could be seen through the water at the end of the dock. It was determined shortly after the accident that the water in front of the platform was thirty-five inches deep and the platform extended forty-six inches above the top of the water. As in past years, no signs at the end of the dock warned of shallow water or prohibited diving, and no Resort employee told guests to avoid diving from the end of the dock. Similarly, no signs or Resort employee warned guests that the Lake's water level was abnormally low. Dooley's estimated blood alcohol level at the time of the accident was .076. Dooley testified that he was not affected by his alcohol consumption, and others testified that the alcohol had no discernible effect on his behavior.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The parties agree that Minnesota law applies to this diversity action. *See Gylten v. Swalboski*, 246 F.3d 1139, 1141 (8th Cir. 2001). A plaintiff must prove the following elements to establish a claim for negligence: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of that duty being the proximate cause of the injury." *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001). The Resort argues that it owed Dooley no duty of care and that, even if it did owe him a duty, any breach of that duty was not the proximate cause of his injury.

### A. Duty of care

The existence of a duty is generally a legal issue for a court to determine. *Id.* Only "where the existence of a duty turns upon contradicted facts [must] those facts . . . be submitted

to a jury for resolution prior to the court's legal conclusion on the issue." *Reimer v. City of Crookston*, 326 F.3d 957, 961 (8th Cir. 2003) (citing Minnesota law). "[A] landowner has a duty to use reasonable care for the safety of all entrants upon the premises." *Olmanson v. LeSueur County*, 693 N.W.2d 876, 880 (Minn. 2005). For resort owners who avail themselves "of the advantages of riparian ownership for resort purposes," this duty requires "'active vigilance'" in protecting their patrons from foreseeable risks. *Montes v. Betcher*, 480 F.2d 1128, 1131 (8th Cir. 1973) (quoting *Hanson v. Christensen*, 145 N.W.2d 868, 873 (Minn. 1966)). This duty, however, "is not absolute." *Louis*, 636 N.W.2d at 319. Instead, a "'possessor of land is not liable to his invitee for physical harm caused to [him] by any activity or condition on the land whose danger is known or obvious to [him], unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Id.* (quoting Restatement (Second) of Torts § 343A (1965)).

The Resort argues that it owed Dooley no duty to warn of the danger of diving from the dock into shallow water after consuming six beers because the danger of the activity (i.e., diving after consuming alcohol) and condition (i.e., shallow water) on the land were known or obvious. The Resort's framing of the issue, however, ignores the present procedural posture. As noted above, a landowner does not owe an entrant a duty to warn of activities or conditions on the land whose danger is known or obvious and that *caused* physical harm to the invitee. In this case, a fact issue exists as to whether Dooley's alcohol consumption caused his injury. Accordingly, Dooley's alcohol consumption is not a relevant activity for purposes of the duty-of-care inquiry, and the proper inquiry is whether the danger of diving from the end of the dock into the Lake in July 2006 was known or obvious.

5

The term "known" in this context "denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Id.* at 321 (quotation marks omitted). In other words, "the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id.* (quotation marks omitted). In this case, it is undisputed that Dooley knew that the water at the end of the dock in July 2006 was shallow enough to require a shallow dive. He allegedly did not know, however, that the water level in the Lake was lower than in past years. Without such knowledge, Dooley could not have appreciated the probability of striking his head on the lakebed. Therefore, the danger of diving into the Lake's abnormally shallow water in July 2006 was not known to Dooley.

A condition is "obvious" if "both the condition and the risk are apparent to and would be recognized by a reasonable [person] in the position of the visitor, exercising ordinary perception, intelligence and judgment." *Id.* (quotation marks omitted). Here, although it is unclear whether the bottom of the Lake was visible through the water at the end of the dock, a reasonable person who had walked in the water near the dock earlier in the day and had swum in the water at the end of the dock in preceding years would recognize that the water there was shallow. Similarly, the substantial distance from the dock to the top of the water would be apparent to a reasonable person. In light of these obvious conditions, the danger of diving headfirst into the shallow water from an elevated dock without first determining the exact depth of the water would be obvious to a reasonable person. *See Snilsberg v. Lake Wash. Club*, 614 N.W.2d 738, 744 (Minn. Ct. App. 2000) (finding no duty because "risk of harm . . . was the common-sense danger that the water off the shorter service dock may have been too shallow for diving"); *see also Bucki v. Hawkins*, 914 A.2d 491, 496 (R.I. 2007) (noting open and obvious danger to a "twenty-four-year-old man"

of "executing a dive into a shallow lake without first ascertaining whether there has been any change in depth since one's last dive"); *Dowen v. Hall*, 548 N.E.2d 346, 348 (Ill. App. Ct. 1989) ("In our view, the risk of paralysis from executing a flat dive from the pier into the uncertain depths of the natural lake was open and obvious in the instant case."). Accordingly, the Resort had no duty to warn Dooley of the danger of diving from the dock in July 2006 unless it should have anticipated the harm despite the obvious danger.

Even if the danger of an activity or condition on the land is known or obvious to the invitee, "a possessor has a duty to warn if harm to an invitee should be anticipated despite the obviousness of the danger." *Baber v. Dill*, 531 N.W.2d 493, 496 (Minn. 1995) (citing *Peterson v. W.T. Rawleigh Co.*, 144 N.W.2d 555, 557-58 (Minn. 1966)). This exception is "a crucial qualifier to the general rule," *Sutherland v. Barton*, 570 N.W.2d 1, 7 (Minn. 1997), but it does not extend to situations in which "the anticipated harm involves dangers so obvious that no warning is necessary," *Baber*, 531 N.W.2d at 496. Although "the distinction between an obvious condition that requires anticipation of harm and an obvious condition that does not require anticipation of harm 'is a fine one,'" it must be made. *Gilmore v. Walgreen Co.*, 759 N.W.2d 433, 436 (Minn. Ct. App. 2009) (quoting *Baber*, 531 N.W.2d at 496); *see also Davis v. Walter*, A06-457, 2007 Minn. App. Unpub. LEXIS 14, at *10-11 (Minn. Ct. App. Jan. 2, 2007) ("A cynic might suggest that our cases imply that where the danger is *really* obvious, there is no landowner duty, but where the danger is really, *really* obvious, there is a duty, yet, where the danger is really, really, *really* obvious, there is again no duty.").

A fact issue exists in this case as to whether the Resort should have anticipated that its guests would dive from the end of the elevated dock despite the obviousness of the shallow water and the attendant risk of striking the lake bottom. The easiest way for guests to access the water

7

trampoline was to enter the water from the end of the dock. Dooley testified that he dove from the end of the dock numerous times in past years and that he observed two young girls diving off of the dock in the hours before his accident. Additionally, an employee of the Resort testified that he saw guests dive from the end of the dock, and one of Dooley's relatives stated that he dove from the end of the dock in the past. Therefore, despite Susan Anderson's testimony that she never saw a guest dive from the end of the dock, other evidence permits the inference that guests regularly dove from the end of the dock. Based on this evidence, a fact issue exists as to whether the Resort should have anticipated that a guest would dive from the dock in July 2006 and break his neck after striking his head on the lakebed. Accordingly, the Court cannot conclude as a matter of law that the Resort did not owe Dooley a duty of care.

Even if the Resort owed Dooley a duty of care, the Resort argues that Dooley relieved it of that duty by primarily assuming the risk of diving from the end of the dock into shallow water. Minnesota law distinguishes primary from secondary assumption of risk. "Primary assumption of risk, express or implied, relates to the initial issue of whether a defendant was negligent at all—that is, whether the defendant had any duty to protect the plaintiff from a risk of harm." *Springrose v. Springrose*, 192 N.W.2d 826, 827 (Minn. 1971). Secondary assumption of risk, by contrast, "is a form of contributory negligence." *Schneider v. Erickson*, 654 N.W.2d 144, 149 (Minn. Ct. App. 2002). Both doctrines require proof that "the plaintiff had (a) knowledge of the risk, (b) an appreciation of the risk, and (c) a choice to avoid the risk." *Id.* at 149. The distinguishing characteristic between the two doctrines is that primary assumption of risk requires a plaintiff to manifest his consent "to relieve the defendant of his obligation to act reasonably." *Davis*, 2007 Minn. App. Unpub. LEXIS 14, at *12-13; *see also Andren v. White-Rodgers, Co.*, 465 N.W.2d 102, 105 (Minn. Ct. App. 1991) ("The manifestations of acceptance

and consent dictate whether primary or secondary assumption of the risk is applicable in a given case."). "The defendant pleading primary assumption of the risk must demonstrate that by proceeding with the activity, the plaintiff intended to relieve the defendant of any duty to protect against a risk that was inherent, obvious, and unavoidable." *T.H.S. Northstar Assocs. v. W.R. Grace & Co.*, 66 F.3d 173, 176 (8th Cir. 1995). "[N]ot every deliberate encountering of a known danger . . . is reasonably to be interpreted as evidence of such consent." *Iepson v. Noren*, 308 N.W.2d 812, 815 (Minn. 1981) (quotation marks omitted).

As noted earlier, Dooley knew the water at the end of the dock was shallow enough to require a shallow dive but did not know that the water was substantially shallower than in previous years. Without this knowledge, Dooley could not have appreciated the risk of diving from the end of the dock in July 2006. *See Reimer*, 326 F.3d at 969 (rejecting a "generalized approach" to analyzing the risk causing the injury in favor of "a 'more detailed' inquiry into the 'particular risk' causing the injury" (quoting *Armstrong v. Mailand*, 284 N.W.2d 343, 352-53 (Minn. 1979)). No other facts support a manifestation of consent by Dooley to relieve the Resort of its duty of care. As a result, the undisputed facts do not establish that Dooley relieved the Resort of its duty by voluntarily encountering a known, appreciated, and avoidable risk.

**B.     Proximate cause**

To establish proximate cause, a plaintiff must show "that the negligent conduct was a substantial factor in bringing about the injury." *Lietz v. N. States Power Co.*, 718 N.W.2d 865, 872 (Minn. 2006). This requires only a "plausible causal linkage between a breach of duty and [the] injuries." *Jonathan v. Kvaal*, 403 N.W.2d 256, 260 (Minn. Ct. App. 1987) (quotation marks omitted). The issue of proximate cause must be decided by a jury unless "reasonable minds could reach only one conclusion." *Lietz*, 718 N.W.2d at 872 (quotation marks omitted).

Relying exclusively on *McCormick v. Custom Pools, Inc.*, 376 N.W.2d 471 (Minn. Ct. App. 1985), the Resort argues that, as a matter of law, Dooley is unable to establish that the Resort's failure to warn him of the danger of diving from the end of the dock in July 2006 did not proximately cause his injury. *McCormick* is distinguishable, however, because the plaintiff in that case was aware of all of the conditions that a warning would have contained. *Id.* at 477. In contrast, Dooley was not aware that the water level at the end of the dock was lower than previous years. A reasonable jury could find that Dooley would have abstained from diving off of the dock if he had been warned of the lower water level in July 2006. Therefore, a fact issue remains on the issue of proximate causation, and summary judgment in favor of the Resort is not warranted.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Resort's Motion for Summary Judgment [Docket No. 72] is DENIED.

2. Plaintiffs' Motion for an Extension of Time to Reply to Defendant's Motion for Summary Judgment [Docket No. 84] is GRANTED.

Dated: May 17, 2010

s/ Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge